UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENIS PAPUSHA                                    CIVIL ACTION

VERSUS                                           NO. 06-0549

MURPHY EXPLORATION AND                           SECTION "K"(1)
PRODUCTION COMPANY USA

ORDER AND OPINION

Before the Court are the "Motion in Limine to Exclude the Testimony of Plaintiff's Expert, Robin P. Stagg, P.E."(Doc. 77) and the "Motion to Strike the New Report of Robin P. Stagg and Exclude the Testimony of Robin P. Stagg as it Relates to That Report" (Doc. 85), both filed on behalf of defendants J. Ray McDermott, Inc. and SparTec Inc. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion in limine (Doc. 77) and GRANTS the motion to strike (Doc. 85).

BACKGROUND

Dennis Papusha, an employee of Murphy Exploration & Production Company ("Murphy") injured himself aboard the FRONT RUNNER, a SPAR platform. At the time of his injury, Mr. Papusha and others working aboard the platform were attempting to reinstall pipeline pump A. The reinstallation of pipeline pump A required lifting the pump with a chain hoist attached to a dedicated monorail. Because the pump was not centered under the chain hoist hook, the hook was attached to the pipeline at an angle. While pulling the hoist chain to lift the pump, Mr. Papusha felt something in his shoulder "pop." Plaintiff contends that the hoist chain experienced a bind because

1

the lift was not vertical, and that he sustained injuries due to that bind.

Plaintiff filed suit against McDermott and SparTec contending that they improperly designed the platform because pipeline pump A could not be moved by the pedestal crane directly to the area beneath the chain hoist. Plaintiff also asserts that McDermott and SparTec were negligent in preparing the Materials Handling Safety Report ("MHS") for the platform by failing to include instructions with respect to supplemental rigging necessary for moving pipeline pump A once it was in the "laydown" area of the platform.

In a report dated December 12, 2008, Robin Stagg, plaintiff's expert witness, opined that:

- "it is not possible for the pedestal crane to locate a pipeline pump in it's transportation cradle onto Laydown Area C-2 such that the center of gravity of the combined load is within 27 inches horizontal measure of the location required for a vertical lift by [the chain hoist];
- "[w]ithout . . . supplemental rigging to move the combined load, then, lifting of the pump from it's closest possible location requires a lift inclined from vertical. With a horizontal offset of 30 inches, the lift angle on the hoist would be approximately 9 degrees from the vertical, and in such a direction as to impose a side load on the hoist and it's trolley, a loading for which the hoist is not designed. Use of a monorail hoist for a non-vertical lift is bad practice and is prohibited by ANSIB30.16, the ANSI/ASME standard pertaining to overhead, underhung, hoists unless specific investigation determines that no component overstress will occur;
- [i]t is possible that imposition of a fleet angle on the hoist would cause binding of the chain due to the chain attempting to climb out of the sheave pocket (whelp); and
- "[t]he Material Handling Study Report, generated by J. Ray McDermott, Inc. . . includes instruction and discussion for lifting and locating various equipment within "Frontrunner", supposedly where the handling procedures therein are quite detailed . . . The entry for the pipeline pumps notes only that "These items will be removed with monorail CMR-101/102/103/104 to laydown area C-2", without any discussion of supplemental rigging required for PAX-

6040A[pipeline pump A]."

On January12, 2009, after defendants filed this motion in limine, Mr. Stagg issued a "supplemental" report addressing the "engineering responsibility of McDermott," the "inclusion of Material Handling Study (MHS) within the McDermott engineering scope of work," the "extent of MHS and definition of Laydown Area," and "dilution of the engineering responsibility of McDermott to render a complete and adequate design due to review and comment by Murphy." Doc. 85-4 Exhibit B.

## LAW AND ANALYSIS

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence. " *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized

generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means fo attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

<u>a) Motion in Limine to Exclude Testimony of Robin P. Stagg</u>

Defendants seek to exclude all of the opinions offered by Robin Stagg for various reasons. Defendants urge that Mr. Stagg's testimony regarding the pedestal crane will not assist the trier of fact in determining whether the platform was improperly designed because it is undisputed that the shipping cradle and pipeline pump A cannot be placed directly by the pedestal crane in a centered position underneath monorail A and its chain hoist, and Mr. Stagg does not opine that the design of the platform is flawed due to that limitation. Defendants also seek to exclude Mr. Stagg's testimony concerning the cause of the bind urging that his opinion is unscientific, unreliable and speculative because he failed to explore whether the angle that would cause the chain to bind was present at the time of plaintiff's accident. Defendants also seek to exclude Mr. Stagg's opinion regarding the scope of the MHS asserting that it is unreliable, irrelevant and prejudicial to defendants.

It is within the province of the jury to determine whether the defendants were negligent in

designing the platform. Mr. Stagg's opinion that the pedestal crane is unable to position the cradled pipeline pump in the laydown area within the distance necessary required for a vertical lift by the chain hoist and his related testimony concerning the effect of the inability to so position the pipeline pump with respect to the chain hoist is relevant to the determination of whether defendant's improperly designed the platform. Those opinions will assist the trier of fact in analyzing plaintiff's allegations that defendants failed to properly design the platform. Implicit in Mr. Stagg's report is his opinion that the inability of the pedestal crane to position the cradled pump directly under the chain hoist hook constitutes a design defect in the platform.

The Court further concludes that Mr. Stagg's opinion concerning the cause of the chain bind is not scientifically unreliable or speculative, and therefore non-admissible, because he failed to calculate the precise angle at which a bind could occur during a non-vertical lift. Mr. Stagg's testimony is sufficiently reliable to warrant presentation to the jury, where it will undoubtedly be challenged through vigorous cross-examination and defendants' presentation of contrary evidence. Ultimately, the jury will assess Mr. Stagg's opinion as to the cause of the bind and determine the weight, if any, to accord his opinion.

A similar analysis applies to Mr. Stagg's opinion regarding the scope of the MHS prepared by McDermott for Murphy. Although Mr. Stagg has apparently never written an all-encompassing material handling study for an offshore platform, he has written installation procedures for platforms, installation procedures for submersible structures, and rigging and installation procedures for erection of structures in fabrication yards. That experience qualifies him to testify as an expert on the scope of the MHS. The jury will assess the weight to be accorded to that testimony.

Nor is the Court persuaded that Ms. Stagg's opinion concerning the scope of the MHS should

6

be excluded because there are no written industry standards defining the scope and requirements for material handling studies. It is the jury's responsibility to determine whether defendants breached a duty with respect to their development of the MHS. The lack of industry standards is not dispositive of that issue; it is simply one factor to be considered by the jury. Moreover, considering the lack of industry standards, the Court finds that the Mr. Stagg's testimony concerning the scope of the MHS and the meaning of the term "laydown areas" will assist the trier of fact to determine whether defendants were negligent with respect to the confection of the MHS.

### b) Motion to Strike the New Report of Robin Stagg

Defendants seek to strike Mr. Stagg's January 12, 2009, expert report and exclude any testimony by him related to that report contending that the report was prepared and delivered to defendants beyond the December 12, 2008, deadline for plaintiff to deliver expert reports and that plaintiff has failed to demonstrate good cause for the late delivery of the report. Additionally, defendants contend that the January 12, 2009, report does not "supplement" the opinions set out in Mr. Stagg's December 8, 2008, report, but rather sets forth new opinions, and that defendants would be prejudiced if Mr. Stagg is permitted to testify to those opinions.

The Court imposed Scheduling Order provides that "[t]he Court will not permit any witness, expert or fact, to testify . . . unless there has been compliance with this Order as it pertains to the witness . . . without an order to do so issued on motion for good cause shown." Doc. 56, p.2. That order sets November 12, 2008, as the deadline for plaintiff to provide defendant with the written reports of plaintiff's experts. The parties, without leave of Court, agreed to extend until December 12, 2008, the deadline for plaintiff to deliver to defendants Mr. Stagg's report. Mr. Stagg's January 12, 2009, report is not timely under either the Court imposed deadline or that agreed to by the

parties. Nor has plaintiff provided good cause for his failure to comply with the December 8, 2008, deadline. Plaintiff asserts that the delay resulted from defendants' failure to timely provide plaintiff with a copy of the contract between McDermott and Murphy, despite plaintiff's request at the "outset of the litigation" for production of the contract. Considering plaintiff's failure to attempt to timely obtain the contract through a motion to compel, McDermott's belated production of the contract does not constitute good cause for the failure to timely deliver the expert's January 12, 2009, report.

The Court also finds that the January 12, 2009, report is not sufficiently germane to the opinions expressed in the earlier expert report to constitute a "supplemental" report. That report expresses opinions concerning the interpretation of the contract between McDermott and Murphy, which were not addressed in the earlier report. Mr. Stagg's statement in the December 8, 2008, report that "[a]dditionally, of particular interest would be receipt of all contract documentation relating to the scope of work for J. Ray McDermott Engineering as it pertains to rigging and procedures for placement of equipment on the decks of "Frontrunner", particularly as regards responsibility for the Material Handling Study" does not render opinions on that issue "supplemental" to those expressed in the December 8, 2008, report.

Moreover, any issues concerning the interpretation of the contract between McDermott and Murphy are legal issues to be determined by the Court. The Court concludes that the opinions expressed by Mr. Stagg in the January 2009, report will not assist it in determining the scope of that contract. Accordingly,

**IT IS ORDERED** that the "Motion in Limine to Exclude the Testimony of Plaintiff's Expert, Robin P. Stagg, P.E." (Doc. 77) is DENIED;

**IT IS FURTHER ORDERED** that the "Motion to Strike the new Report of Robin P. Stagg and Exclude the Testimony of Robin P. Stagg as it Relates to that Report" (Doc. 85) is GRANTED.

New Orleans, Louisiana, this 2nd day of February, 2009.

                                        STANWOOD R. DUVAL, JR.
                                        UNITED STATES DISTRICT JUDGE